UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Marylyn Sumner, et al, | 2:14-cv-02121-JAD-VCF |
| Plaintiffs | **Order Granting Motion for Partial Summary Judgment and Remanding Case to State Court** |
| v. | |
| Summerlin Hospital Medical Center LLC, et al., | [ECF 21] |
| Defendants | |

    This medical malpractice case arises out of the death of 91-year-old Edna Sumner, who died at Summerlin Hospital on November 9, 2013. Edna's children Marylyn Sumner (individually and on behalf of Edna's estate), Harold Scott Sumner, and Donna Chartau sue Summerlin Hospital and Edna's attending physician Dr. Shazia Hamid for a handful of state-law claims and assert one federal-law claim under the Emergency Medical Treatment & Labor Act ("EMTALA").[1] Summerlin Hospital moves for summary judgment on plaintiffs' EMTALA claim, arguing that it fails as a matter of law because plaintiffs allege—and offer evidence to show—only post-admission malfeasance.[2] I agree, grant Summerlin Hospital's motion for partial summary judgment on plaintiffs' sole federal-law claim, and remand this case back to Nevada's Eighth Judicial District court, Case No.: A-14-709473-C.[3]

---

[1] ECF 1.

[2] Summerlin Hospital filed the motion for summary judgment, ECF 21, and Dr. Hamid filed a notice of joinder to that motion. ECF 22. Plaintiffs have since conceded that their EMTALA claim is plead against Summerlin Hospital only, and that Dr. Hamid is not a proper defendant for this claim. I therefore do not consider Dr. Hamid to have joined in this motion.

[3] I find this motion suitable for disposition without oral argument. LR 78-2.

# Background[4]

Plaintiffs allege the following: On November 7, 2013, they accompanied Edna Sumner to the emergency room at Summerlin Hospital, where she complained of chest pain.[5] Edna was evaluated in the ER by Dr. Stuart Meyers. Shortly after midnight, on November 8, 2013, Edna was admitted for observation.[6] Defendant Dr. Shazia Hamid was Edna's assigned physician.[7] After her admission, Edna began to complain of abdominal pain, nausea, and vomiting.[8] Dr. Hamid ordered an abdominal x-ray[9] and a CT scan[10] but did not physically examine Edna.[11]

The CT Scan purportedly showed a mass on Edna's abdomen. Dr. Hamid was aware of the results,[12] but, despite plaintiffs' repeated requests,[13] Dr. Hamid allegedly refused to relay them because she was not by a computer.[14] Plaintiffs requested a replacement doctor and that Edna be moved to another hospital via ambulance; both requests were denied.[15]

On November 9, 2013, Dr. Hamid finally visited plaintiffs and reassured them that Edna was not in immediate danger and that there was no life-threatening condition.[16] But, at approximately

---

[4] These facts are given for background purposes only and should not be construed as findings of fact.

[5] ECF 25-1 at ¶ 3.

[6] ECF 1 at ¶ 12.

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶ 14, ECF 25-1 at ¶ 6.

[9] ECF 1 at ¶ 14.

[10] *Id.* at ¶ 17.

[11] *Id.* at ¶ 15.

[12] *Id.* at ¶ 17.

[13] *Id.* at ¶ 19.

[14] *Id.* at ¶ 22.

[15] *Id.* at ¶¶ 24–25.

[16] *Id.* at ¶¶ 26–27.

4:30 a.m. on November 9th, Edna suffered the first of three cardiopulmonary arrests. Edna coded blue three times and was pronounced dead three hours later.[17] According to a privately obtained autopsy, Edna's cause of death was gallbladder torsion.[18]

Plaintiffs assert four claims: (1) medical negligence/wrongful death (2) negligent hiring, training, and supervision, (3) Emergency Medical Treatment & Labor Act (EMTALA) violations, and (4) intentional infliction of emotional distress.[19] Summerlin Hospital argues that plaintiffs' EMTALA claim fails as a matter of law because "a hospital's duties to a patient under the EMTALA end once the patient is admitted for inpatient care," once the hospital properly screened and admitted Edna, its duties under EMTALA were discharged.[20] Plaintiffs respond that summary judgment is inappropriate because a reasonable juror could conclude that Summerlin Hospital violated EMTALA's patient-stabilization and screening requirements.[21]

## Discussion

**A.   Summary-Judgment Standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[23] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts

---

[17] *Id.* at ¶ 28.

[18] *Id.* at ¶ 29.

[19] ECF 1.

[20] ECF 21 at 4 (citing *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169 (9th Cir. 2002)).

[21] ECF 25. Plaintiffs also argue that the court should decline to entertain Summerlin Hospital's motion because it does not contain a section of undisputed facts as required by Local Rule 56-1. I reject plaintiffs' characterization and find that the motion contains a concise statement of undisputed material facts. *See* ECF 21 at 4–9.

[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[23] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

are undisputed, and the case must then proceed to the trier of fact.[24]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[25] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[26] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[27]

## B.  The Emergency Medical Treatment and Active Labor Act (EMTALA)

"Congress enacted EMTALA to ensure that individuals, regardless of their ability to pay, receive adequate emergency medical care."[28] "Congress was concerned that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized."[29] If a patient seeks emergency medical care from a qualifying hospital, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine [if] an emergency medical condition . . . exists."[30] If an emergency medical condition is discovered, then hospital staff must "stabilize" the patient before transferring her to another facility

---

[24] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[26] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[27] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[28] *Bryant*, 289 F.3d at 1165 (citing *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001)).

[29] *Id.* (citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995)).

[30] *Id.* (citing 42 U.S.C. § 1395dd(a); *Eberhardt*, 62 F.3d at 1255).

or discharging her.[31] To "stabilize" means to "provide [that] medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during" the patient's discharge or transfer to another facility.[32]

### C. Plaintiffs have not identified a genuine issue of fact for their claim that Summerlin Hospital violated EMTALA's screening or stabilization requirements.

Plaintiffs argue that a reasonable jury could find that Summerlin Hospital failed to properly screen Edna because there is no evidence that Dr. Hamid physically examined her.[33] Plaintiffs also argue that Summerlin Hospital cannot escape liability under EMTALA simply because it admitted her for inpatient care because "a hospital cannot escape liability under EMTALA by admitting a patient with no intention of treating [her], and then discharging or transferring [her] without first stabilizing [her]."[34] Alternatively, plaintiffs argue that Summerlin Hospital failed to stabilize Edna because Dr. Hamid did not order maintenance intravenous fluids and did not intervene after Edna developed symptoms that were not initially present in the emergency department.[35]

Summerlin Hospital responds that it is entitled to summary judgment on plaintiffs' EMTALA claim because, as a matter of law, a hospital's duties under EMTALA end once the patient is admitted for inpatient care.[36] But plaintiffs' claim is based almost entirely on Dr. Hamid's post-admission care of Edna.[37] Because Edna was properly screened and admitted by emergency-room

---

[31] *See id.* (citing 42 U.S.C. § 13955(b)(1); *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 992 (9th Cir. 2001)).

[32] *Id.* (citing 42 U.S.C. §§ 1395dd(e)(3)(A), (e)(4)).

[33] ECF 25 at 8 (emphasis added).

[34] *Id.* at 7 (citing *Bryant*, 289 F.3d at 1169).

[35] ECF 25 at 10.

[36] ECF 26 at 2.

[37] *Id.*

physician Dr. Meyers, defendants contend that plaintiffs' claim fails.[38]

Plaintiffs offer no evidence to show that Edna received an inadequate medical-screening examination in the ER. The record shows that Dr. Meyers physically examined Edna. His notes include a detailed summary of Edna's past medical and surgical history and vital signs and state that her abdomen was "soft, nontender, and nondistended. Without masses."[39] Plaintiffs argue that a reasonable jury could find in their favor because there is no evidence that *Dr. Hamid* physically examined Edna.[40] But, as Summerlin Hospital points out, plaintiffs' allegations pertain solely to post-admission care. There is no evidence, nor do plaintiffs appear to argue, that Edna was not properly screened in the ER. And though it does not appear that Edna's abdominal problems were discovered during the ER screening and she was initially admitted for chest pains, as the Ninth Circuit panel explained when interpreting the reach of the statute in *Bryant v. Adventist Health System/West*, "a hospital does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition."[41] Thus, Summerlin Hospital cannot be liable under EMTALA for failing to discover Edna's condition at that time.

Plaintiffs also have identified no genuine issue of material fact to suggest that Summerlin Hospital violated EMTALA's stabilization requirement. Plaintiffs offer no evidence to support, nor do they allege, that Summerlin Hospital transferred or discharged Edna without stabilizing her. The *Bryant* panel held that "EMTALA's stabilization requirement ends when an individual is admitted for inpatient care."[42] It reasoned that "Congress enacted EMTALA to create a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat and not to duplicate

---

[38] *Id.*

[39] ECF 25-1 at ¶ 3.

[40] ECF 25 at 8 (emphasis added).

[41] *Bryant*, 289 F.3d at 1166.

[42] *Id.* at 1168.

pre-existing legal protections."[43]  "After an individual is admitted for inpatient care, state tort law provides a remedy for negligent care."[44]  Summerlin Hospital fulfilled EMTALA's stabilization requirement when it admitted Edna for inpatient care.

Though plaintiffs are correct that, "a hospital cannot escape liability under EMTALA by ostensibly 'admitting' a patient, with no intention of treating [her]," the *Bryant* panel made it clear that courts "will not assume that hospitals use the admission process as a subterfuge to circumvent the stabilization requirement of EMTALA."[45]  Liability for post-admission conduct will attach only if "a patient demonstrates in a particular case that inpatient admission was a ruse to avoid EMTALA's requirements."[46]  Nothing in the record suggests that Summerlin Hospital admitted Edna from the ER with no intention of treating her as a ruse to avoid EMTALA liability.  Indeed, plaintiffs' own evidence unequivocally shows that medical staff took steps to treat Edna after her admission: Dr. Hamid prescribed nausea and pain medication[47] and ordered a stat abdominal x-ray[48] and a CT scan of Edna's abdomen and pelvis.[49]  Plaintiffs' allegations that Edna received substandard care, once admitted, are cognizable under state tort law, not under EMTALA.  Because plaintiffs have offered no genuine issue of material fact that Summerlin Hospital violated EMTALA's screening or stabilization requirements, I grant Summerlin Hospital's motion for partial summary judgment on their EMTALA claim.

---

[43] *Id.* at 1168–69 (internal citation and quotation marks omitted).

[44] *Id.* at 1169.

[45]  *Id.*

[46] *Id.*

[47] ECF 25-1 at ¶ 4.

[48] *Id.* at ¶ 6.

[49] *Id.* at ¶ 8.

**D.     This case is remanded back to Nevada's Eighth Judicial District Court.**

The dismissal of plaintiffs' EMTALA claim leaves only their three state-law claims over which I have been exercising supplemental jurisdiction.[50] Supplemental jurisdiction is a doctrine of discretion, not of right.[51] A federal district court may decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction.[52] The decision to decline to exercise supplemental jurisdiction under Section 1367(c) should be informed by the values of economy, convenience, fairness, and comity.[53] And 28 USC 1447(c) dictates that, "if at any time before final judgment it appears that the district court lacks subject[-]matter jurisdiction, the case [must] be remanded."

Economy, convenience, and comity compel me to decline to continue to exercise supplemental jurisdiction over plaintiffs' remaining state-law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."[54] These factors weigh in favor of remanding this removed case. This case has not been extensively litigated in this court, discovery has not closed, and a trial date has not been set. I therefore decline to exercise supplemental jurisdiction over plaintiffs' remaining claims and remand this case back to Nevada's Eighth Judicial District Court.

---

[50] *See* 28 U.S.C. §1367.

[51] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

[52] *See* 28 U.S.C. § 1367(c).

[53] *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

[54] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Summerlin Hospital's motion for partial summary judgment **[ECF 21]** is **GRANTED.** This case is hereby remanded to the Eighth Judicial District Court, Clark County Nevada, Case number A-14-709473-C.

Dated this 1st day of February, 2016

_____
Jennifer A. Dorsey
United States District Judge